**CHANNEL LUMBER COMPANY,**
Appellant,

v.

**WEYERHAEUSER STEAMSHIP COM-
PANY, Appellee.**

No. 310, Docket 24464.

United States Court of Appeals
Second Circuit.

Argued April 5, 1957.

Decided May 14, 1957.

Max Ornstein, New York City, for the appellant.

William Warner, New York City, Symmers, Fish, Warner & Nicol, New York City, for appellee, William Garth Symmers, Frederick Fish, New York City, of counsel.

Before CLARK, Chief Judge, and HAND and LUMBARD, Circuit Judges.

PER CURIAM.

In our decision in Hirsch Lumber Co. v. Weyerhaeuser Steamship Co., 233 F.2d 791, we held that bills of lading, in the same terms as those now at bar, gave the carrier the right to retain money paid for freight, although it discharged the cargo at a different place from that prescribed in the bill of lading. It was a condition of this right, however, that the carrier should have made reasonable effort to deliver the cargo at the place specified, and it had the burden of proving the excuse. We shall not repeat the reasoning by which we reach this conclusion; the plaintiff has not persuaded us that it was wrong. Therefore the only question on this appeal is whether the defendant proved that it was "reasonable" to deliver at Philadelphia the consignment covered by the "Port Newark" bill of lading, and to deliver at Brooklyn the two "Bayway" consignments. We agree with Judge Boldt that the discharge was "reasonable" in both instances.

As to the "Port Newark" bill of lading the evidence was that the defendant had been advised that the longshoremen anywhere in Newark or in Brooklyn would have respected the picket line of the teamsters union which would have been set up, had the defendant attempted to discharge the "Port Newark" consignment at either port. That was not true however if that consignment were discharged at Philadelphia. As to the two "Bayway" consignments, although the teamsters union would not have set up a picket line in Brooklyn, they would have done so, if the defendant had tried to discharge those consignments anywhere in Newark. They regarded the original consignment to "Port Newark" (which to the union meant the "Atlantic Terminal" where the strike was on) as tainting the

212

ship for the delivery of any of the three consignments in Newark, even though the "Port Newark" consignment had been discharged at Philadelphia. All this was substantially the undisputed evidence; at least findings in accord with that interpretation of the evidence were not "clearly erroneous." We hold that such facts constituted a lawful excuse for the failure to discharge all three consignments as prescribed in the bills of lading. The action of the court appears sufficiently without "findings of fact," described as such.

We need only add that it was not necessary for the defendant to prove that, as between the plaintiff and itself, the term "Port Newark, New Jersey" meant the "Atlantic Terminal" at Newark. We do not hold that there was evidence compelling the plaintiff to accept that interpretation, for the meaning of the term as between the parties was irrelevant; all that counted was whether the teamsters union, whose picket lines the longshoremen respected, would treat a bill of lading issued by the defendant for discharge at "Port Newark, New Jersey" as equivalent to one calling for delivery at the "Atlantic Terminal" in that port. Since the teamsters union so interpreted the term, the longshoremen's refusal to discharge was an excuse to the defendant, no matter how unwarranted or capricious that interpretation may have been.

Judgment affirmed.